UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

RYAN COHEN

*Defendant.*

Civil Action No. 1:24-cv-02670-RLJ

## <u>UNOPPOSED MOTION AND MEMORANDUM OF THE UNITED STATES IN SUPPORT OF ENTRY OF FINAL JUDGMENT</u>

Pursuant to the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b)-(h) ("APPA"), plaintiff United States of America ("United States") moves for entry of the proposed Final Judgment filed on September 18, 2024 (Document 1-3). The proposed Final Judgment may be entered at this time without further proceedings if the Court determines that entry is in the public interest. 15 U.S.C. § 16(e). The Competitive Impact Statement ("CIS") filed by the United States on September 18, 2024 (Document 1-4) explains why entry of the proposed Final Judgment is in the public interest. The United States is filing simultaneously with this Motion and Memorandum a Certificate of Compliance (attached as Exhibit 1) setting forth the steps taken by the parties to comply with the applicable provisions of the APPA and certifying that the sixty-day statutory public comment period has expired, and no public comments have been received.

I.     **BACKGROUND**

On September 18, 2024, the United States filed a Complaint against Defendant Ryan Cohen ("Cohen") related to Cohen's acquisition of voting securities of Wells Fargo & Company ("Wells Fargo") from February 2018 through April 2020.

The Complaint alleges that the Defendant violated Section 7A of the Clayton Act, 15 U.S.C. § 18a, commonly known as the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (the "HSR Act").  The HSR Act requires certain acquiring and acquired parties to file pre-acquisition Notification and Report Forms with the U.S. Department of Justice and the Federal Trade Commission (collectively, the "federal antitrust agencies" or "agencies") and to observe a statutorily mandated waiting period before consummating their acquisition.[1]  A fundamental purpose of the notification and waiting period is to allow the agencies an opportunity to conduct an antitrust review of proposed transactions that meet the HSR Act's jurisdictional thresholds before they are consummated.

Compliance with the HSR Act is critical to the federal antitrust agencies' ability to investigate large acquisitions before they are consummated, and prevent acquisitions determined to be unlawful under Section 7 of the Clayton Act, 15 U.S.C. §18.  Before Congress enacted the HSR Act, the federal antitrust agencies often were forced to investigate anticompetitive acquisitions that had already been consummated without public notice.  In those situations, the agencies' only recourse was to sue to unwind the parties' merger.  The combined entity usually had the incentive to delay litigation, and years often passed before the case was adjudicated and

---

[1] The HSR Act requires that "no person shall acquire, directly or indirectly, any voting securities of any person" exceeding certain thresholds until both have made premerger notification filings and the post-filing waiting period has expired. 15 U.S.C. § 18a(a).  The post-filing waiting period is either 30 days after filing or, if the relevant federal antitrust agency requests additional information, 30 days after the parties comply with the agency's request. 15 U.S.C. § 18a(b).  The agencies may grant early termination of the waiting period, 15 U.S.C. § 18a(b)(2).

relief was pursued or obtained. During this extended time, consumers were harmed by the reduction in competition between the merging parties and, even after the court's adjudication, effective relief was often impossible to achieve. Congress enacted the HSR Act to address these problems and to strengthen and improve antitrust enforcement by giving the agencies an opportunity to investigate certain large acquisitions before they are consummated.

As alleged in the Complaint, Cohen acquired voting securities of Wells Fargo without making the required pre-acquisition HSR Act filings with the agencies and without observing the waiting period. Cohen is an entrepreneur and is the managing member of RC Ventures, LLC. Beginning in June 2016, Cohen made periodic acquisitions of Wells Fargo voting securities. On February 5, 2018, Cohen emailed Wells Fargo's CEO to advise him of contributions he could make to Wells Fargo should he become a member of Wells Fargo's board of directors. Cohen proceeded to have periodic communications with Wells Fargo's leadership regarding suggestions to improve Wells Fargo's business and to advocate for a potential board seat through at least April 2020. On March 22, 2018, Cohen acquired 562,077 Wells Fargo voting securities via the open market, which resulted in his aggregated holdings of Wells Fargo voting securities to exceed to $100 million threshold, as adjusted, which in March 2018, was $168.8 million. Cohen's acquisitions of Wells Fargo voting securities on March 22, 2018, were not exempt under the HSR Act's "solely for the purpose of investment" exemption. Cohen's intent when he made the March 22, 2018, acquisitions of Wells Fargo voting securities was to participate "in the formulation, determination, or direction of the basic business decisions" of Wells Fargo, as evidenced, *inter alia,* by Cohen's email on February 5, 2018, wherein he advocated to join Wells Fargo's board of directors. At the time of each of these acquisitions, Cohen and Wells Fargo met the then-applicable statutory size-of-person thresholds. The Complaint seeks an adjudication

that Cohen's acquisition of Wells Fargo voting securities violated the HSR Act and asks the Court to award an appropriate civil penalty.

At the same time the Complaint was filed, the United States also filed a Stipulation, proposed Final Judgment, and a CIS describing the events giving rise to the alleged violation and the proposed Final Judgment. The Stipulation, which was agreed to by the parties, provides that the proposed Final Judgment may be entered by the Court once the requirements of the APPA have been met. The terms of the proposed Final Judgment and imposition of a civil penalty of $985,320 are designed to address the violation alleged in the Complaint and deter Defendant's future HSR Act violations. .

Entry of the proposed Final Judgment would terminate this action, except that the Court would retain jurisdiction to construe, modify, or enforce the provisions of the Final Judgment and to punish violations thereof. Unless it is extended, the Final Judgment will remain in effect until payment in full by the Defendant of the civil penalty.

## II.      <u>COMPLIANCE WITH THE APPA</u>

The APPA requires a sixty-day period for the submission of written comments relating to the proposed Final Judgment, 15 U.S.C. § 16(b). In compliance with the APPA, the United States filed the proposed Final Judgment and CIS with the Court on September 18, 2024, and published the proposed Final Judgment and CIS in the *Federal Register* on September 25, 2024, 2022, *see* 89 Fed. Reg. 78330-336 (2024). Summaries of the terms of the proposed Final Judgment and CIS, together with directions for the submission of written comments relating to the proposed Final Judgment, were published in *The Washington Post* for seven days over a period of two weeks during the period from September 27, 2024, through October 3, 2024. The sixty-day period for public comments ended on December 2, 2024. The United States received

no written comments relating to the proposed Final Judgment.

The Certificate of Compliance filed with this Motion and Memorandum states that all the requirements of the APPA have been satisfied.  It is now appropriate for the Court to make the public interest determination required by 15 U.S.C. § 16(e) and to enter the Proposed Final Judgment.

## III.    STANDARD OF JUDICIAL REVIEW

Before entering the proposed Final Judgment, the APPA requires the Court to determine whether the proposed Final Judgment "is in the public interest."  15 U.S.C. § 16(e)(1).  In making that determination, the Court shall consider:

(A) the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and

(B) the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

15 U.S.C. § 16(e)(1)(A)-(B).  Section 16(e)(2) of the APPA states that "[n]othing in this section shall be construed to require the court to conduct an evidentiary hearing or to require the court to permit anyone to intervene." 15 U.S.C. § 16(e)(2).  In the CIS filed with the Court on September 18, 2024, the United States explained the meaning and proper application of the public interest standard under the APPA and now incorporates those portions of the CIS by reference.

## IV.    CONCLUSION

For the reasons set forth in this Motion and Memorandum and the CIS, the Court should find that the proposed Final Judgment is in the public interest and should enter the proposed

Final Judgment without further proceedings.  The United States respectfully requests that the

Final Judgment, attached hereto as Exhibit 2, be entered at this time.

Dated:  December 4, 2024                              Respectfully Submitted,


   /s/ Kenneth A. Libby
Kenneth A. Libby
Special Attorney